## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANCIS J. BUTTA** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 19-675** |
| | : |
| **GEICO CASUALTY COMPANY** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                    **April 19, 2019**

Under section 1738 of the Motor Vehicle Financial Responsibility Law effective in July 1990, a Pennsylvanian buying auto insurance may pay increased premiums to stack his underinsured motorist coverage to provide more coverage for another vehicle insured by his family in the same household by the same insurer. He is entitled to this stacking unless he signs a form waiving this right. Avoiding the form waiver, insurers introduced "household exclusions" precluding stacking underinsured coverage when the vehicle involved in the accident is not listed on every insurance policy issued to family members in the same house. For over twenty-eight years, Pennsylvania courts wrestled with the insurers' household exclusion compared to section 1738. In August 2017, the Pennsylvania Supreme Court agreed to hear an appeal on whether the household exclusion violated Pennsylvania Law. On January 23, 2019, the Pennsylvania Supreme Court held this household exclusion violated section 1738 at least when the same insurer agreed to stacking on different vehicles operated by family members in the same house. An injured insured now seeks a declaratory judgment and damages after his insurer declined stacking under the identical household exclusion language. The insurer moves to dismiss arguing the January 23, 2019 decision does not apply to the insured's earlier-issued policies. After careful analysis of the varied caselaw, we hold the decision did not announce a new rule but interpreted the law for the first time in a retroactive precedential decision. We deny the insurer's motion to dismiss.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FRANCIS J. BUTTA** | **: CIVIL ACTION** |
| | : |
| **v.** | **: NO. 19-675** |
| | : |
| **GEICO CASUALTY COMPANY** | : |

### MEMORANDUM

**KEARNEY, J.**                                               **April 19, 2019**

Under section 1738 of the Motor Vehicle Financial Responsibility Law effective in July 1990, a Pennsylvanian buying auto insurance may pay increased premiums to stack his underinsured motorist coverage to provide more coverage for another vehicle insured by his family in the same household by the same insurer. He is entitled to this stacking unless he signs a form waiving this right. Avoiding the form waiver, insurers introduced "household exclusions" precluding stacking underinsured coverage when the vehicle involved in the accident is not listed on every insurance policy issued to family members in the same house. For over twenty-eight years, Pennsylvania courts wrestled with the insurers' household exclusion compared to section 1738. In August 2017, the Pennsylvania Supreme Court agreed to hear an appeal on whether the household exclusion violated Pennsylvania Law. On January 23, 2019, the Pennsylvania Supreme Court held this household exclusion violated section 1738 at least when the same insurer agreed to stacking on different vehicles operated by family members in the same house. An injured insured now seeks a declaratory judgment and damages after his insurer declined stacking under the identical household exclusion language. The insurer moves to dismiss arguing the January 23, 2019 decision does not apply to the insured's earlier-issued policies. After careful analysis of the varied caselaw, we hold the decision did not announce a new rule but interpreted the law for the first time in a retroactive precedential decision. We deny the insurer's motion to dismiss.

## I. Plead facts.

Pennsylvanian Francis J. Butta insured his motorcycle with an underinsured motorist ("UIM") coverage policy issued by GEICO Indemnity Company providing $15,000/$30,000 of stacked coverage.[1] He lives with his parents, Francis R. Butta and Yvonne Butta.[2] His parents insured their two cars with a separate UIM policy issued by GEICO Casualty Company providing up to $200,000 of stacked coverage.[3]

UIM provides coverage to an insured when the insurance of the tortfeasor causing the insured harm is insufficient to cover the insured's damages.[4] "Inter-policy stacking" allows an insured to accumulate multiple coverages under different policies in the same household.[5] An insured pays a higher premium to stack coverages. Francis J. Butta and his parents stacked their coverages.[6] His parents' GEICO policy contained an amendment referred to as a "household exclusion,"[7] noting the coverage "does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy."[8]

On July 20, 2017, Francis J. Butta suffered severe injuries while riding his motorcycle after an underinsured driver, June E. Rosengrant, struck Mr. Butta with her car.[9] Ms. Rosengrant's liability coverage provided $300,000 in compensation to Mr. Butta, insufficient to compensate him for his injuries.[10] Mr. Butta then collected $15,000 from his own UIM coverage.[11] His compensation still insufficient, Mr. Butta next made a claim under the UIM policy issued to his parents.[12]

GEICO denied his claim for UIM coverage under his parents' policy on August 18, 2017.[13] GEICO based its denial on the household exclusion reading: "When This Coverage Does Not Apply[:] This coverage does not apply to *bodily injury* while *occupying* or from being struck by a

2

vehicle owned or leased by *you* or a *relative* that is not insured for Underinsured Motorist Coverage under this policy."[14] GEICO explained Mr. Butta's parents' UIM coverage did not apply to Mr. Butta because he is related to the policyholders and their GEICO policy did not insure his motorcycle.[15]

## II. Analysis

Mr. Butta sued GEICO on January 23, 2019 seeking we declare he is entitled to recover stacked underinsured motorist coverage under his parents' policy and compensatory damages for a breach of contract.[16] He alleges the "household exclusion" is not enforceable under the Pennsylvania Supreme Court's January 23, 2019 holding in *Gallagher v. GEICO Indemnity Co.*[17] In *Gallagher*, the Pennsylvania Supreme Court held the same household exclusion relied upon by GEICO today in denying coverage violates Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"). Mr. Butta argues the Pennsylvania Supreme Court's decision applies retroactively to his policy in effect before the Pennsylvania Supreme Court's January 2019 decision. GEICO moves to dismiss seeking to uphold its denial of coverage arguing the Pennsylvania Supreme Court January 23, 2019 holding is not retroactive.[18]

On July 1, 1990, the General Assembly amended the MVFRL to provide, "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured."[19] This policy, called "stacking," applies unless an insured affirmatively waives it.[20] The MVFRL contains a form insureds must sign to properly waive stacking.[21] Under policies with a "household exclusion," however, stacking does not cover people living in the same household as the insured but not included in the insured's policy.[22]

3

On January 23, 2019, the Pennsylvania Supreme Court held the household exclusion violates the MVFRL "under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL."[23] GEICO argues it legally denied Mr. Butta's claim under the household exclusion, as the household exclusion constituted an enforceable exception when Mr. Butta's policy applied and when he made his claim.[24] Mr. Butta does not dispute the language of his parents' policy, if enforceable, excluded coverage. He instead argues the Pennsylvania Supreme Court's *Gallagher* decision bars the application of the household exclusion.

### A.  How do we decide if *Gallagher* is retroactive?

Because the Pennsylvania Supreme Court did not decide whether *Gallagher* applies to the same language in pre-policies issued to other persons, we "must predict how Pennsylvania's highest court would decide this case."[25] "In predicting how the highest court of the state would resolve the issue, [we] must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."[26]

"To determine whether a decision should have retroactive effect, a court should first determine whether the decision announced a new rule of law."[27] "A decision announces a new rule of law if it overrules prior law, expresses a fundamental break from precedent that litigants may have relied on, or decides an issue of first impression not clearly foreshadowed by precedent."[28] "One of the hallmarks of whether [the Pennsylvania Supreme Court] has issued a new rule of law is if the decision overrules, modifies, or limits any previous opinions of [the Pennsylvania Supreme] Court."[29] As to statutory law like the MVFRL, when the Pennsylvania Supreme Court has "not yet answered a specific question about the meaning of a statute, [its] initial interpretation does not announce a new rule of law."[30] Its "first pronouncement on the substance

of a statutory provision is purely a clarification of an existing law."[31] In such cases, the Pennsylvania Supreme Court's interpretation of the statute "constitutes its meaning from its inception."[32] And is retroactive.

But if a case announces a new rule, Pennsylvania courts generally give the rule retroactive application only to "cases that are pending at the time the new rule is announced."[33] Still, whether to apply a decision retroactively is a matter of "judicial discretion which must be exercised on a case by case basis."[34] We should consider whether: "(1) retroactive effect will further or hinder the purpose of the new rule; (2) the parties will be unfairly prejudiced because they relied on the old rule; and (3) giving the new rule retroactive effect will detrimentally affect the administration of justice."[35]

Mr. Butta argues *Gallagher* did not announce a new rule of law, instead announcing only a judicial construction of the MVFRL which is now part of the MVFRL from its inception. GEICO argues *Gallagher* overruled Pennsylvania law, meaning it is a new rule which should not be applied retroactively to policies in place before *Gallagher*.

## B. The case law before *Gallagher*.

The Pennsylvania Supreme Court considered the validity of "household exclusion" clauses on several occasions with facts like Mr. Butta's case. The issue is whether those earlier cases defined Pennsylvania law.

### 1. *Eichelman*

In its 1998 decision in *Eichelman v. Nationwide Insurance Co.*, the Pennsylvania Supreme Court held a person who lived with his parents could not recover under their policy after he suffered injury riding his motorcycle because the household exclusion clause in their contract did not violate public policy and the parents' policy did not insure the plaintiff's motorcycle.[36] Unlike

5

Mr. Butta, though, the *Eichelman* plaintiff did not have UIM on his motorcycle, so the court had no occasion to discuss stacking.[37] The Pennsylvania Supreme Court held allowing the plaintiff to recover "would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household,"[38] which contradicted the Pennsylvania General Assembly's intent in passing the MVFRL—to "stop the spiralling costs of automobile insurance in the Commonwealth."[39]

### 2. *Colbert*

In 2002, the Pennsylvania Supreme Court considered the public policy of the household exception anew in *Prudential Property and Casualty Insurance Co. v. Colbert* after our Court of Appeals certified the question.[40] The plaintiff, who lived with his parents, suffered injury driving his automobile, which he insured with UIM.[41] After collecting the maximum coverage under his own policy, he sought to recover under his parents' policy, which a different company issued and which did not insure plaintiff's automobile.[42] The insurance company denied the claim under the household exclusion.[43] The Pennsylvania Supreme Court again upheld the household exclusion, holding voiding the exclusion would yield "gratis coverage on a vehicle that the insurer never knew existed."[44] Because the parents' insurer never knew the plaintiff's car even existed, held the Pennsylvania Supreme Court, the insurer would "be compelled to underwrite unknown risks that the insureds neither disclosed nor paid to insure."[45]

### 3. *Riley*

Our Court of Appeals in 2003 found the household exclusion did not violate public policy in *Nationwide Mutual Insurance Co. v. Riley*, relying on *Colbert*.[46] Plaintiff and her father insured their automobiles with UIM under separate policies issued by Nationwide.[47] Plaintiff suffered

injury, recovered under her policy, and then tried to recover under her father's policy, but the insurer denied coverage based on its household exclusion.[48] Our Court of Appeals found *Colbert* controlled its decision even though, unlike *Colbert*, plaintiff sought to recover under a policy issued by the same insurer which issued her policy.[49] Our Court of Appeals did not think the distinction "turn[ed] the tide" because upholding the policy exclusion would still further the public policy of the MVFRL to "contain[] insurance costs."[50]

### 4. *Baker*

The most central pre-*Gallagher* opinion of the Pennsylvania Supreme Court is its 2008 plurality decision in *Erie Insurance Exchange v. Baker*, where it considered whether the household exclusion violated the MVFRL's requirement for an insured to waive stacking.[51] The plaintiff insured his three automobiles with stacking UIM up to $300,000 with Erie Insurance, and separately insured his motorcycle with UIM up to $15,000 with Universal Insurance.[52] He did not sign a waiver of his rights to stack the coverages.[53] The plaintiff suffered injury while riding his motorcycle, collected from the tortfeasor's policy, collected $15,000 from Universal, and then sought UIM from Erie.[54] Erie denied coverage, citing the household exclusion in the Erie policy.[55] A three-justice plurality of the seven-Justice Pennsylvania Supreme Court held the case did "not involve 'stacking' at all" because the unambiguous household exclusion in the Erie policy excluded plaintiff's motorcycle from coverage.[56] The Pennsylvania Supreme Court held its decisions in *Eichelman* and *Colbert* "direct[ed]"[57] its result in *Baker*, emphasizing "*there was no UIM coverage to stack.*"[58] The Pennsylvania Supreme Court concluded the exclusion "is valid as applied in this case."[59]

Justice Saylor concurred "in the result only."[60] He found *Eichelman* and *Colbert* "readily distinguishable" because they "were litigated and decided on more general public policy

7

grounds."[61] The three dissenting Justices agreed the plurality's reliance on *Colbert* and *Eichelman* "is misplaced because those cases considered whether a household exclusion violated general public policy and did not address the interaction between the household exclusion and the specific language of § 1738."[62] But Justice Saylor still found the General Assembly's intent behind the MVFRL, "ensuring the collection of reasonable premiums,"[63] directed the same result the plurality reached.[64] Justice Saylor thought "[h]ad the Legislature intended to invalidate [long-standing policy exclusions], it would have done so more directly."[65] Justice Saylor concluded "it is most reasonable to treat these exclusions as going to the scope of the UM/UIM coverage in the first instance, before stacking questions are reached, rather than as an aggregation question arising under the stacking provisions."[66]

### 5. *Ayers*

In facts most similar to Mr. Butta's claim, an evenly divided Pennsylvania Supreme Court *per curiam* affirmed a Superior Court decision in 2011 without an opinion enforcing a household exclusion in *Government Employees Insurance Co. v. Ayers*.[67] The insured had two separate UIM policies issued by GEICO; he had one insuring his two motorcycles and the other insuring his two pick-up trucks.[68] The plaintiff did not waive stacking, but the policy insuring the trucks contained the household exclusion.[69] The plaintiff suffered injury while occupying his motorcycle, and GEICO denied coverage based on the household exclusion in the policy covering plaintiff's pick-up trucks.[70] Plaintiff argued the household exclusion constituted a *de facto* waiver of stacking, violating the MVFRL.[71] The Pennsylvania Superior Court disagreed, holding the plaintiff knew his policy limited the extent of its stacking.[72] In the Pennsylvania Supreme Court's one page *per curiam* affirmance, Justice Saylor issued a brief concurrence, noting he "would disapprove the

8

utilization by an insurer of separate policies pertaining to multiple vehicles within the same household solely to subvert intra-policy stacking without any risk-based justification."[73]

### 6. *Reichert*

In 2012, our Court of Appeals addressed the household exclusion in *Reichert v. State Farm Insurance Co.*, enforcing a waiver of stacking UIM.[74] Plaintiff, who lived with her parents and her son, suffered injury driving her car.[75] She sought to stack her own UIM with both her parents' and her son's policies, all of which State Farm issued.[76] Her parents waived stacking; her son did not.[77] Her parents' policy contained a household exclusion.[78] Our Court of Appeals held the valid household exclusion precluded coverage, meaning "the applicability of stacking provisions need not be addressed."[79] Our Court of Appeals rejected the argument Justice Saylor's concurrence in *Ayers* "cast[] doubt on the rule that a valid household exclusion provision precludes coverage, and thereby prevents an insured from stacking UIM coverage."[80]

## C. The *Gallagher* decision.

in *Gallagher v. GEICO Indemnity Co,*[81] plaintiff had two insurance policies, both from GEICO; one insuring only his motorcycle up to $50,000 in UIM, and the other insuring his two automobiles up to $100,000 in UIM.[82] He paid for stacked coverage on both policies.[83] He suffered injury in a motorcycle accident, collected under the tortfeasor's policy, collected $50,000 under his motorcycle policy, then sought to collect stacked UIM benefits under his automobile policy, which GEICO denied citing the household exclusion.[84]

In the Pennsylvania Superior Court's decision in *Gallagher* affirming the trial court's grant of summary judgment to the insurer, Judge Moulton held "we are bound by this Court's decision in *Ayers* . . . [w]e are also bound by *Baker*."[85] But Judge Moulton questioned whether *Ayers* and *Baker* would remain binding:

9

We recognize, however, that the inter-policy stacking issue in all three cases is both important and closely contested. As noted above, the Supreme Court was evenly split 3–3 in *Ayers*, and *Baker* did not produce a majority opinion. Given the significance of this legal issue and the divided nature of the Supreme Court in both *Ayers* and *Baker*, Gallagher may wish to petition the Pennsylvania Supreme Court for allowance of appeal.[86]

In a concurring opinion which all three judges joined, Judge Musmanno "[r]eluctantly" concurred.[87] He restated the view he had propounded in *Ayers* those who paid for inter-policy stacking on motorcycles "will be stripped of these benefits when they are injured while riding their motorcycles."[88] He concluded: "My reasoning is no less applicable in the instant situation, and the issue warrants review by our Supreme Court."[89]

On August 8, 2017, the Pennsylvania Supreme Court granted a Petition for Allowance of Appeal.[90] Appeals to the Pennsylvania Supreme Court are "not a matter of right, but of sound judicial discretion, and an appeal will be allowed *only when there are special and important reasons therefor*." [91] The court agreed to decide two issues:

(1) Whether the "household vehicle exclusion" violates Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) where GEICO issued all household policies and unilaterally decided to issue two separate policies, when the insured desired stacking, elected stacking, paid additional premiums for stacking and never knowingly waived stacking of underinsured motorist benefits?

(2) Whether the "household vehicle exclusion" impermissibly narrows or conflicts with the statutory mandates of the Pennsylvania Motor Vehicle Financial Responsibility Law and the evidence of record is that GEICO was fully aware of the risks of insuring a motorcycle in the same household as other family vehicles but unilaterally decided to write a separate motorcycle policy? [92]

The Pennsylvania Supreme Court had "special and important reasons" to decide the two issues. It granted the allowance of appeal after the Pennsylvania Superior Court unanimously recommended an appeal, found the issues "important and closely contested," and recognized "the

10

significance of this legal issue and the divided nature of the Supreme Court in both *Ayers* and *Baker*."[93]

On January 23, 2019, the Pennsylvania Supreme Court found the household exclusion violated the MVFRL because plaintiff never waived stacking and paid increased premiums, yet could not stack benefits as a result of the household exclusion.[94] The Pennsylvania Supreme Court found MVFRL section 1738 explicitly requires a waiver of stacking, but the household exclusion allows waiver of stacking without so much as a showing the insured "was even aware that the exclusion was part of the insurance policy."[95] And the Court noted GEICO could not argue it did not know the motorcycle existed, as GEICO "sold both of the policies to Gallagher and collected premiums for stacked coverage from him."[96] The court summarized its holding: "As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL."[97]

Other language from *Gallagher* assists our analysis.

In its *Gallagher* decision, the Pennsylvania Supreme Court noted both *Ayers* and *Baker* did not raise *stare decisis* concerns because they did not constitute "binding precedent"—*Ayers* because the Pennsylvania Supreme Court issued a split-decision, *per curiam* affirmance;[98] and *Baker* because it constituted only a plurality decision.[99] As to *Baker* in particular, the Pennsylvania Supreme Court held "we are not disregarding any precedential impact of *Baker* because no position became law of the case."[100]

The Pennsylvania Supreme Court spoke to the potential impact of its decision:

> We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident that the industry can and will employ its considerable resources to minimize the impact of our holding. For example, when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process.[101]

11

This suggestion did not assuage the concerns of dissenting Justice Wecht, who questioned

the impact of the decision:

> After upending this Court's well-established precedent, the Majority's parting wisdom to Pennsylvania insurers is simply that they should use their "considerable resources" to mitigate the damage that the Court inflicts today. The Majority also suggests that, "when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process." Of course, that would not fix the problems that the Majority's holding is sure to cause, since insureds routinely add new household vehicles—or even new household members—long after the "application process" has concluded. And, significantly, the Majority proposes no solution for the thousands of existing policies that insurers have issued in reliance upon the law as it existed prior to today.[102]

## D. The Pennsylvania Supreme Court's *Gallagher* decision did not announce a new rule.

On January 23, 2019, the Pennsylvania Supreme Court held the household exclusion

constituted a *de facto* waiver of the stacked UIM coverage the Pennsylvania General Assembly

mandated in the MVFRL The Pennsylvania Supreme Court in *Gallagher* did not announce a new

rule of Pennsylvania law because it did not express a "fundamental break from precedent" or

modify a "previous opinion" of the Pennsylvania Supreme Court. Before *Gallagher*, the

Pennsylvania Supreme Court issued a plurality opinion in *Baker*, a *per curiam* affirmance without

an opinion in *Ayers*, and did not address the MVFRL in *Colbert* and *Eichelman*. The Pennsylvania

Supreme Court's holding in *Gallagher* does not change binding Pennsylvania law. As a result,

*Gallagher* applies to the MVFRL since its inception and applies to Mr. Butta's policy.

### 1. *Baker* is a plurality opinion without precedential impact and *Ayers* is a *per curiam* opinion without precedential impact.

As a plurality decision, *Baker* does not constitute binding precedent. Under Pennsylvania

law, "[w]hile the ultimate order of a plurality opinion; i.e. an affirmance or reversal, is binding on

the parties in that particular case, legal conclusions and/or reasoning employed by a plurality

certainly do not constitute binding authority."[103]   Reliance on a plurality opinion is "problematic."[104]

The Pennsylvania Supreme Court explicitly disclaimed any precedential value of *Baker* in *Gallagher*, noting *Baker* "does not raise concerns regarding *stare decisis* because, as a plurality opinion, it does not constitute binding precedent."[105]  "[C]ontrary to the Dissent's assertions," wrote the *Gallagher* majority, "we are not disregarding any precedential impact of *Baker because no position became law of the case*."[106]  We find the Pennsylvania Supreme Court's language unambiguous: *Baker* is not binding precedent.  *Gallagher* is the first majority opinion of the Pennsylvania Supreme Court to address whether a household exclusion "acts as a *de facto* waiver of stacked UIM coverage."[107]

In evaluating *Gallagher*, we begin with the Pennsylvania Supreme Court defines *stare decisis*: "The doctrine of *stare decisis* maintains that for purposes of certainty and stability in the law, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different."[108]  "In this formulation the terms 'conclusion' and 'in the law' are particularly meaningful because *stare decisis* relates primarily to rules or pronouncements of law."[109]  If *Baker* does not "raise concerns regarding *stare decisis*," then, we can infer the Pennsylvania Supreme Court does not read *Baker* to constitute a "rule[] or pronouncement[] of law."[110]  Coupled with the Pennsylvania Supreme Court's holding in *Gallagher* "no position became the law of [*Baker*]," we find Pennsylvania law does not view a plurality opinion as binding precedent.

Likewise, the Pennsylvania Supreme Court's *per curiam* decision in *Ayers* did not constitute binding precedent because the six Justices who decided *Ayers* split 3–3. "It is a universal rule that when a judicial or semi-judicial body is equally divided, the subject-matter with which it

is dealing must remain in statu[s] quo."[111] The *Ayers* decision simply left the Superior Court's decision in status quo. To establish a new rule, the Pennsylvania Supreme Court must modify an earlier Pennsylvania Supreme Court decision, not a Superior Court decision. As with *Baker*, the Pennsylvania Supreme Court held "*Ayers* does not raise concerns regarding *stare decisis* because it does not constitute binding precedent"[112] because *Ayers* constituted a *per curiam* decision. *Ayers* is not binding precedent for the same reasons *Baker* is not binding precedent.

We are aware the Pennsylvania Supreme Court can establish a new rule when it "overrules, modifies, or limits any previous opinions"[113] of the Pennsylvania Supreme Court. And *Gallagher* seems to at least modify *Baker* and *Ayers*, which, though not binding precedent, are still "previous opinions." In resolving the conflict between what constitutes a new rule and the Pennsylvania Supreme Court's dismissal of the precedential value of *Baker* and *Ayers*, we are guided by the Pennsylvania Superior Court's decision in *Commonwealth v. Owens*, where it found a Pennsylvania Supreme Court decision abrogating a Pennsylvania Supreme Court plurality did not constitute a new rule.[114]

In *Owens*, the appellant filed a state habeas petition arguing his prison sentence should be reduced by twenty months for time served because he served twenty months under house arrest with electronic monitoring before becoming incarcerated in state prison.[115] His appeal concerned interpretation of the Pennsylvania statute allotting credit for time served, 42 Pa.C.S.A. § 9760.[116] The Pennsylvania Supreme Court earlier addressed section 9760 in *Commonwealth v. Chiappini*, where a three-Justice plurality furthered a case-by-case approach to determining time served under section 9760.[117] Four Justices did not endorse the three-Justice plurality's approach, but one of those four, Justice Nigro, concurred in the plurality's ultimate conclusion.[118] Two months after the *Owens* appellant's sentencing, the Pennsylvania Supreme Court reinterpreted section 9670 in

*Commonwealth v. Kyle*, where a majority held time spent on bail release under electronic monitoring does not count as time served under section 9670.[119] The Pennsylvania Supreme Court noted the *Chiappini* framework "lack[ed] precedential status" because it "was not endorsed by a majority of the Court."[120] The *Owens* appellant argued *Kyle* should not apply retroactively to his case because *Kyle* was decided two months after his sentencing.[121] The Pennsylvania Superior Court disagreed, finding *Kyle* applied retroactively because *Kyle* only abrogated a plurality decision:

> Appellant has raised a valid inquiry here, but we are constrained to apply the *Kyle* rule retroactively, which precludes Appellant from receiving credit for the time that he spent under house arrest. As discussed above, *Kyle* sets a bright-line rule on this issue. *Kyle* specifically abrogated *Commonwealth v. Chiappini*, which permitted courts to consider crediting house arrest time on a case-by-case basis. ***Although Kyle might thus have signaled a new rule of law that could not be applied retroactively, Kyle specified that this element of Chiappini garnered only a mere plurality within a fractured Court.***[122]

The Pennsylvania Superior Court's reasoning in *Owens* applies to the retroactivity of *Gallagher*. *Baker* and *Ayers*, just like *Chiappini*, do not have precedential status as plurality and *per curiam* decisions. *Gallagher* is the Pennsylvania Supreme Court's first precedential interpretation of MVFRL § 1738, just as *Kyle* is the Pennsylvania Supreme Court's first precedential interpretation of 42 Pa.C.S.A. § 9760. Neither opinion announced a new rule. We note *Chiappini* and *Baker* differ in one degree: in *Chiappini*, only three Justices endorsed the case-by-case approach; in *Baker*, four Justices agreed the household exclusion was enforceable. But we do not think this difference nullifies the Pennsylvania Supreme Court's express admonition in *Gallagher* "no position became law of [*Baker*]."[123] We do not find GEICO's arguments to the contrary persuasive.

GEICO argues *Baker* is binding precedent because the Pennsylvania Superior Court noted in *Gallagher* it was "bound by *Baker*."[124] We disagree, as we find the Pennsylvania Supreme

15

Court's *own* interpretation of the precedential import of *Baker*—i.e., nil—overrides the Pennsylvania Superior Court's interpretation. This is particularly so where, as here, the Pennsylvania Supreme Court dismissed *Baker*'s precedential import in a footnote accompanying a sentence describing how the Pennsylvania Superior Court characterized *Baker*. Moreover, GEICO's interpretation of the Pennsylvania Superior Court's *Gallagher* language disregards the same court's repeated concerns about *Baker*'s vitality. All three Superior Court judges noted the "divided nature" of the Pennsylvania Supreme Court on the issue, and explicitly counseled an appeal of their own ruling. Judge Musmanno, in a unanimous concurrence, opined the issue warranted Supreme Court consideration. The Pennsylvania Superior Court's language it was "bound by *Baker*" is simply an acknowledgment of the Pennsylvania Supreme Court's "ultimate order" in *Baker*.

GEICO next argues our Court of Appeals in *Reichert* applied Pennsylvania law as a rule. We are mindful our Court of Appeals addressed a "valid household exclusion provision" which "precludes coverage" as a "*rule*."[125] But we do not interpret our Court of Appeals' use of the word "rule" in describing earlier Pennsylvania caselaw to mean *Gallagher* established a new rule, as we decline to read so much into one word from an unpublished opinion which came almost seven years before *Gallagher*. Moreover, as we sit in diversity, it is our duty to "predict" how the Pennsylvania Supreme Court would rule on the retroactivity of *Gallagher*. We must prioritize the Pennsylvania Supreme Court's own language from the very case we decide to apply to Mr. Butta's case.

GEICO also argues the Pennsylvania Supreme Court made *Gallagher* prospective by noting:

> We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident that the industry can and will employ its

16

considerable resources to minimize the impact of our holding. For example, when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process.[126]

GEICO argues this note is forward-looking because the Pennsylvania Supreme Court wrote the "industry can *and will*" employ its resources to minimize the holding's impact, and then provided an example of a change the industry can make in the future. But a contrary reading of the footnote is equally plausible. The Pennsylvania Supreme Court also noted the industry "*can*" use its resources to minimize the impact and noted the decision may disrupt the industry's "*current*" practices. Mindful of the Pennsylvania Supreme Court's dismissal of *Baker* and *Ayers*'s precedential value, we decline to adopt GEICO's interpretation of this footnote.

GEICO argued we should not treat *Baker* as a plurality because four Justices—a majority—employed the same rationale in upholding the household exclusion. GEICO points to a later opinion of the Pennsylvania Supreme Court in which it noted a "*majority* of this Court [in *Baker*] held that the MVFRL's stacking provisions did not preclude application of the household exclusion."[127] This statement does not affect our reasoning, as we find a majority only agreed on the Pennsylvania Supreme Court's "ultimate order."[128] In *Baker*, Justice Saylor concurred "in the result only." He disagreed with the plurality's view *Colbert* and *Eichelman* directed the result in *Baker*. He instead concluded the General Assembly would have directly invalidated long-standing policy exclusions had it wanted to invalidate them. Justice Saylor did not reach "stacking questions."[129] Mindful of the Pennsylvania Supreme Court's directive "no position became law of [*Baker*]," we decline to parse Justice Saylor's concurrence to discern exactly how he may have agreed with the plurality. GEICO also argues *Baker* established precedent based on *Commonwealth v. Bethea*, where the Pennsylvania Supreme Court noted "only the result" of a plurality opinion "carries precedential weight."[130] Again, we reiterate it is our duty to "predict"

17

whether the Pennsylvania Supreme Court would retroactively apply *Gallagher*. We must prioritize the Pennsylvania Supreme Court's language from *Gallagher* over potentially contradictory language from *Bethea* sixteen years earlier. We predict, based on the Pennsylvania Supreme Court's language in *Gallagher* itself, the court would retroactively apply the case.

### 2. *Gallagher* did not overrule *Colbert* or *Eichelman*, which addressed different issues than *Gallagher*, and *Riley* does not control this case.

The Pennsylvania Supreme Court in *Gallagher* did not overrule or modify *Colbert* or *Eichelman*, as neither opinion considered the same argument made in *Gallagher*. Both *Colbert* and *Eichelman* addressed whether household exclusions violated public policy. They did not address whether a household exclusion "acts as a *de facto* waiver of stacked UIM coverage." Neither opinion mentioned "stacking" once. The *Gallagher* majority did not cite *Eichelman*, and cited *Colbert* only for the general proposition "insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws."[131] We are mindful the *Baker* plurality noted *Colbert* and *Eichelman* "direct[ed]" the result in *Baker*—but four of seven Justices disagreed, finding both *Colbert* and *Eichelman* distinguishable from *Baker*. As a result, *Gallagher*'s overruling of *Baker* does not bear on the vitality of *Colbert* and *Eichelman*.

Likewise, *Riley* does not control our decision here because *Riley* did not address whether the household exclusion constituted a *de facto* waiver of stacked coverages.[132]

### E. Even assuming *Gallagher* established a new rule, we would deny GEICO's Motion as we could not decide as a matter of law whether *Gallagher* applies retroactively without evidence.

We are mindful whether *Gallagher* established a new rule is a "valid inquiry."[133] At oral argument, Mr. Butta's counsel admitted voluntarily dismissing Mr. Butta's first lawsuit because he thought the result in *Gallagher* could clarify ambiguity in the law and a federal court may apply *Ayers* while the Pennsylvania Supreme Court decided *Gallagher*.

18

But even assuming *Gallagher* established a new rule, we would not be able to properly exercise our judicial discretion to determine whether *Gallagher* should apply retroactively without discovery. Under Pennsylvania law, we must consider whether a new "rule" should be applied retroactively including if "the parties will be unfairly prejudiced because they relied on the old rule."[134] GEICO invests most of its briefing and argument attempting to persuade us it is inequitable to apply *Gallagher* to Mr. Butta's policy because the insurance industry had viewed the holding of *Baker* as "well-settled for at least a decade before it was overruled in *Gallagher*."[135] But GEICO presents no evidence of its, or the industry's, reliance on Pennsylvania caselaw other than its own say-so. We cannot evaluate the extent of the unfair prejudice to GEICO without evidence. As a result, even assuming we found *Gallagher* defined a new rule of Pennsylvania law, we cannot discern unfair prejudice to GEICO by applying *Gallagher* to Mr. Butta's contract because GEICO relied so heavily on plurality and *per curiam* opinions of the Pennsylvania Supreme Court. We will not deprive Mr. Butta of the Pennsylvania Supreme Court's interpretation of the MVFRL because the insurance industry relied on non-precedential opinions.

## III. Conclusion

The Pennsylvania Supreme Court's definition of Pennsylvania law in *Gallagher* applies to this case involving stacking under insurance policies issued by the same insurer to family members in the same house. The Pennsylvania Supreme Court's *Gallagher* holding did not establish a "new rule." Its interpretation of the MVFRL vis-à-vis household exclusions is part of the MVFRL from its inception. As GEICO's only argument in its motion to dismiss is *Gallagher* does not apply to this case, we deny GEICO's motion.

---

[1] *Id.* at 36.

[2] ECF Doc. No. 1 at 9 ¶ 2.

19

³ *Id.* at 17 ¶ 46.

⁴ *Id.* at 12 ¶¶ 21–22.

⁵ *Id.* at 14–15 ¶¶ 31–32.

⁶ *Id.* at 10 ¶¶ 7–9.

⁷ *Id.* at 13–14 ¶ 27; *id.* at 18 ¶ 49.

⁸ ECF Doc. No. 7 (Ex. A) at 48 ¶ 2 (emphases omitted).

⁹ *Id.* at 11 ¶¶ 12–14.

¹⁰ *Id.* at 12 ¶¶ 17–19.

¹¹ *Id.* at 12 ¶¶ 22–23.

¹² *Id.* at 13 ¶ 24.

¹³ *Id.* at 13 ¶ 26.

¹⁴ *Id.* (emphases in original).

¹⁵ *Id.*

¹⁶ Mr. Butta first sued GEICO on April 10, 2018. *See Butta v. GEICO Cas. Ins. Co.*, No. 18-1979 (E.D. Pa.), ECF Doc. No. 1. GEICO removed the case on May 10, 2018 and moved to dismiss on May 17, 2018. *Id.* at ECF Doc. No. 3. Before we ruled on GEICO's motion, Mr. Butta voluntarily dismissed on June 22, 2018. *Id.* at ECF Doc. No. 12. We dismissed Mr. Butta's lawsuit without prejudice. *Id.* at ECF Doc. No. 13.

¹⁷ 201 A.3d 131 (Pa. 2019).

¹⁸ When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Insterstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;' " (2) "it should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[19] 75 Pa.C.S.A. § 1738(a).

[20] *Id.* § 1738(b).

[21] *Id.* § 1738(d).

[22] *See Erie Ins. Exch. v. Baker*, 972 A.2d 507, 509 (Pa. 2008) (plurality opinion), *abrogated by Gallagher*, 201 A.3d at 138.

[23] *Gallagher*, 201 A.3d at 138.

[24] ECF Doc. No. 7.

[25] *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45–46 (3d Cir. 2009).

[26] *Id.* at 46 (alteration in original) (internal quotations omitted).

[27] *Passarello v. Grumbine*, 87 A.3d 285, 307 (Pa. 2014).

[28] *Id.* at 308.

[29] *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).

[30] *Fiore v. White*, 757 A.2d 842, 848 (Pa. 2000).

[31] *Id.*

[32] *Commonwealth v. Eller*, 807 A.2d 838, 844 (Pa. 2002).

[33] *Davis ex rel. Davis v. Gov't Emps. Ins. Co.*, 775 A.2d 871, 875 (Pa. Super. Ct. 2001) (citing *Blackwell v. Com., State Ethics Comm'n*, 589 A.2d 1094, 1098–99 (Pa. 1991)).

[34] *Blackwell*, 589 A.2d at 1099.

[35] *Passarello*, 87 A.3d at 307.

[36] 711 A.2d 1006, 1010 (Pa. 1998).

[37] *Id.* at 1007.

[38] *Id.* at 1010.

[39] *Id.*

[40] 813 A.2d 747 (Pa. 2002).

[41] *Id.* at 749.

[42] *Id.*

[43] *Id.*

[44] *Id.* at 754.

[45] *Id.*

[46] 352 F.3d 804, 811 (3d Cir. 2003).

[47] *Id.* at 805.

[48] *Id.* at 806.

[49] *Id.* at 810.

[50] *Id.*

[51] 972 A.2d 507 (Pa. 2008) (plurality opinion), *abrogated by Gallagher*, 201 A.3d at 138.

[52] *Id.* at 509.

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* at 511.

[57] *Id.* at 514.

[58] *Id.* at 513 (emphasis in original).

[59] *Id.* at 514.

[60] *Id.* (Saylor, J., concurring).

[61] *Id.*

[62] *Id.* at 515 (Baer, J., dissenting).

[63] *Id.* (Saylor, J., concurring).

[64] *Id.*

[65] *Id.*

[66] *Id.*

[67] 18 A.3d 1093, 1094 (Pa. 2011) (per curiam), *abrogated by Gallagher*, 201 A.3d at 138.

[68] *Gov't Emps. Ins. Co. v. Ayers*, 955 A.2d 1025, 1027 (Pa. Super. Ct. 2008), *abrogated by Gallagher*, 201 A.3d at 138.

[69] *Id.*

[70] *Id.*

[71] *Id.* at 1029.

[72] *Id.* at 1030 (quoting *Nationwide Mut. Ins. Co. v. Roth*, No. 04-612, 2006 WL 3069721, at *6 (M.D. Pa. Oct. 26, 2006)).

[73] *Ayers*, 18 A.3d at 1094 (Saylor, J., concurring).

[74] 484 Fed. App'x 724, 726 (3d Cir. 2012).

[75] *Id.* at 725.

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.* at 726.

[80] *Id.* (citing *Nationwide Mut. Ins. Co v. Riley*, 352 F.3d 804, 811 (3d Cir. 2003); *Baker*, 972 A.2d at 511; *Colbert*, 813 A.2d at 754).

[81] 201 A.3d at 138.

[82] *Id.* at 132–33.

[83] *Id.* at 133.

[84] *Id.*

[85] *Gallagher v. GEICO Indem. Co.*, No. 352 2016, 2017 WL 394337, at *3 (Pa. Super. Ct. Jan. 27, 2017).

[86] *Id.* (emphases in original).

[87] *Id.* (Musmanno, J., concurring).

[88] *Id.* (quoting *Ayers*, 955 A.2d at 1031 (Musmanno, J., dissenting)).

[89] *Id.*

[90] *Gallagher v. GEICO Indem. Co.*, 170 A.3d 974, 974–75 (Pa. 2017) (per curiam).

[91] Pa.R.A.P. 1114(a) (emphasis added).

[92] *Gallagher*, 170 A.3d at 974-75.

[93] *Gallagher*, 2017 WL 394337, at *3 (emphasis omitted).

[94] *Id.* at 138.

[95] *Id.*

[96] *Id.*

[97] *Id.* at 138 n.8.

[98] *Gallagher*, 201 A.3d at 134 n.3.

[99] *Id.* at 135 n.5.

[100] *Id.*

[101] *Id.* at 138 n.6.

[102] *Id.* at 143 (Wecht, J., dissenting) (internal citations omitted).

[103] *In Interest of O.A.*, 717 A.2d 490, 496 n.4 (Pa. 1998).

[104] *Pitt Ohio Express v. W.C.A.B. (Wolff)*, 912 A.2d 206, 208 (Pa. 2006).

[105] *Gallagher*, 201 A.3d at 135 n.5.

[106] *Id.* (emphasis added).

[107] *Gallagher*, 201 A.3d at 138.

[108] *In re Angeles Roca First Judicial Dist. Phila. Cty.*, 173 A.3d 1176, 1187 (Pa. 2017) (internal quotations omitted).

[109] *Id.*

[110] *Id.*

[111] *Creamer v. Twelve Common Pleas Judges*, 281 A.2d 57, 58 (Pa. 1971) (internal quotations omitted).

[112] *Gallagher*, 201 A.3d at 134 n.3.

[113] *L.J.*, 79 A.3d at 1087.

[114] 936 A.2d 1090, 1092–93 (Pa. Super. Ct. 2007).

[115] *Id.* at 1091.

[116] *Id.*

[117] 782 A.2d 490, 501 (Pa. 2001) (plurality opinion), *abrogated by Commonwealth. v. Kyle*, 874 A.2d 12 (Pa. 2005).

[118] *Id.* at 502 (Nigro, J., concurring); *see Kyle*, 874 A.2d at 20.

[119] *Kyle*, 874 A.2d at 20.

[120] *Id.*

[121] *Owens*, 936 A.2d at 1092.

[122] *Id.* at 1092–93 (emphasis added) (citations omitted).

[123] *Gallager*, 201 A.3d at 135 n.5.

[124] *Gallagher*, 2017 WL 394337, at *3.

[125] *Reichert*, 484 Fed. App'x at 726 (emphasis added).

[126] *Gallagher*, 201 A.3d at 138 n.6.

[127] *Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195, 1208 (Pa. 2011) (emphasis added).

[128] *See O.A.*, 717 A.2d at 496 n.4.

[129] *Baker*, 972 A.2d at 515 (Saylor, J., concurring).

[130] 828 A.2d 1066, 1073 (Pa. 2003). *Bethea* appears inconsistent with the Pennsylvania Supreme Court opinion it cites, *In Interest of O.A.*, where the Pennsylvania Supreme Court explained "legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority." *O.A.*, 717 A.2d at 496 n.4 ("The dissent asserts that we are confusing the 'conclusion' of a plurality decision, which it finds to be precedential, with the reasoning of such decision, which it apparently would agree, is non-precedential. While the ultimate order of a plurality opinion; i.e. an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority. Indeed, an order may be deemed a 'conclusion,' but the conclusion to which we refer in this opinion is not the order of the plurality, but the specific legal conclusion espoused by the plurality. Accordingly, notwithstanding the dissent's attempted distortion of our point here, we reiterate that the plurality's **position** in *Jones,* that corroboration of an informant's tip is not necessary if he has a past history of reliability, does not constitute binding authority." (emphasis in original)).

[131] *Gallagher*, 201 A.3d at 137 (citing *Colbert*, 813 A.2d at 751).

[132] We could have predicted the Pennsylvania Supreme Court would have invalidated the household exclusion based on the MVFRL's waiver provisions even if *Gallagher* did not exist. The only pre-*Gallagher* cases in which the insured had separate policies from the *same* insurer, like Mr. Butta, are *Riley*, *Ayers*, and *Reichert*. *Riley*, however, addressed whether the household exclusion clauses violated public policy, not whether the household exclusion acts as a *de facto* waiver of stacking. *Riley*, 352 F.3d at 811. Our Court of Appeals did not find the plaintiff's policy being issued by the same company affected its decision as applicable today; but our Court of Appeals did not address the same argument the plaintiffs made in *Baker* and *Ayers*. As a result, *Ayers* and *Reichert* are the only cases we cannot distinguish from Mr. Butta's situation. Neither decision binds us. *Ayers* is a Pennsylvania Superior Court opinion which the Pennsylvania Supreme Court left in "status quo" with a *per curiam* affirmance. *See Creamer*, 281 A.2d at 58. *Reichert* is an unpublished, non-precedential decision. *See Jamison v. Klem*, 544 F.3d 266, 278 n.11 (3d Cir. 2008) ("We have steadfastly attempted to discourage District Courts as well as attorneys from relying on nonprecedential opinions of this court."). The General Assembly has unambiguously made stacking the default when "more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage" *unless* an insured waives it. 75 Pa.C.S.A. § 1738. We may have predicted the Pennsylvania Supreme Court would find the household exclusion in Mr. Butta's parents' policy acted as a *de facto* waiver of stacking.

[133] *Owens*, 936 A.2d at 1092.

[134] *Passarello*, 87 A.3d at 307.

[135] ECF Doc. No. 7 at 13.